## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

| | |
|---|---|
| IN RE: | ) CHAPTER 13 |
| | ) |
| Maria Lourdes Tresvant | ) CASE NO.17-20886-MJK |
| aka Maria L. Predo | ) |
| Debtor | ) |
| Select Portfolio Servicing, Inc as servicer for DLJ | ) |
| Mortgage Capital, Inc., | ) |
| | ) |
| Movant, | ) |
| v. | ) CONTESTED MATTER |
| Maria Lourdes Tresvant, Debtor | ) |
| | ) |
| M. ELAINA MASSEY,  Trustee | ) |
| Respondents. | ) |

## MOTION FOR RELIEF FROM STAY

COMES NOW, Select Portfolio Servicing, Inc., as servicer for DLJ Mortgage Capital, Inc., for itself, its successors and assigns, ("Movant") and moves this Court for relief from the automatic stay pursuant to 11 U.S.C. § 362.  In support thereof, Movant shows the Court as follows:

1.

Select Portfolio Servicing, Inc. currently services the loan for DLJ Mortgage Capital, Inc., which is secured by a Deed to Secure Debt and Promissory Note with respect to Debtor's real property located at 2320 "I" STREET, BRUNSWICK, GA 31520, copies of which are attached hereto as Exhibits.

2.

In the event the automatic stay in this case is modified, the case dismisses, and/or Debtor(s) obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of DLJ Mortgage Capital, Inc., which is the entity

that has the right to foreclose by virtue of being owner and holder of the Note. DLJ Mortgage Capital, Inc., is the holder of the Note. The Note is either made payable to DLJ Mortgage Capital, Inc., or has been duly endorsed.

3.

Debtor filed for relief under Chapter 13 of the U.S. Bankruptcy Code on 11/30/2017.

4.

As of 2/12/2018, Debtor has defaulted in payments due for 12/1/2017 through 2/1/2018, in the amount of $152.55 each, for a total due of $457.65. A MFR Post-Petition Payment History is attached here to as Exhibit "A".

5.

The principal balance is $10,682.86, as of 2/12/2018.

6.

The market value of the property is approximately $107,000.00, per last Broker's Price Opinion dated 11/02/17.

7.

Because Debtor has demonstrated a continuing default and the clear inability to make payments required by the loan documents and the provisions of the bankruptcy code, Movant is not adequately protected. For the above and foregoing reasons, Movant asserts cause exists sufficient to waive the requirements of Bankruptcy Rule 4001(a)(3), therefore allowing an Order to be effective upon entry.

8.

Movant requests upon entry of an Order granting relief from stay, that Rule 3002.1 of the Federal Rules of Bankruptcy Procedure no longer apply as the claim is not provided for under 11 U.S.C. Section 1322(b)(5).

9.

Movant requests that it be permitted to contact Debtor or Debtor's Counsel, as appropriate, through its agents, servicers, and representatives for the purpose of engaging in discussions and consideration for possible loss mitigation options, solutions, and resolutions, as appropriate with regard to the underlying Security Deed and Note, including, but not limited to loan modification or other loss mitigation alternatives.

WHEREFORE, the Movant prays for an Order relieving it from the automatic stay of 11 U.S.C. § 362, authorizing Movant to proceed with the exercise of the private power of sale and foreclosure under its Security Deed; any dispossessory proceedings, if necessary, all in accordance with and pursuant to appropriate state statutes; directing that Rule 3002.1 no longer apply. Movant further prays that the provisions of Bankruptcy Rule 4001(a)(3) be waived so that such Order be effective upon entry.

This ___23rd___ day of ___February___, 2018.

.

Respectfully Submitted,

**/s/ Richard B. Maner**
Richard B. Maner, GA Bar No. 486588
Counsel for Movant
5775 Glenridge Drive
Building D, Suite 100
Atlanta, GA 30328
Phone: (404) 252-6385; Fax: (404) 252-6394
*rmaner@rbmlegal.com*

## CERTIFICATE OF SERVICE

I, Richard B. Maner, certify that I am over the age of 18 and that on February 23, 2018 served a copy of Movant's **MOTION FOR RELIEF FROM STAY** electronically.  Those not served electronically have been served by depositing same in the United States Mail in a properly addressed envelope to each with adequate postage prepaid on the following persons or entities at the addresses stated:


Maria Lourdes Tresvant
2320 "I" Street
Brunswick, GA 31520

R. Flay Cabiness
Bankruptcy Group, LLC
2225 Gloucester Street
Brunswick, GA 31520

M. Elaina Massey
Post Office Box 1717
Brunswick, GA 31521


Dated:     February 23, 2018

/s/ **Richard B. Maner**
Richard B. Maner
Counsel for Movant
GA Bar No. 486588
RICHARD B. MANER, P.C.
5775 Glenridge Drive
Building D, Suite 100
Atlanta, GA  30328
Phone: (404) 252-6385; Fax: (404) 252-6394
rmaner@rbmlegal.com

**SPS** *Portfolio* SERVICING, *inc.*

Preparation Date:02/12/2018
Prepared By: ManojkumarMu

## MFR Post-Petition Payment History for Filing

| Loan Information | |
|---|---|
| Loan Number | 4745 |
| Debtors Name - 1 | TRESVANT, MARIA L |
| Debtors Name - 2 | - |
| Property Address | 2320 I ST |
| Property State | GA |

| Bankruptcy Information | |
|---|---|
| Bankruptcy Case # | 17-20886 |
| Filing Date | 11/30/2017 |
| Person filing | MARIA L TRESVANT |
| Number of previous filings | 1 |

| Post Petition Default Information | |
|---|---|
| Post petition due date | 12/01/2017 |
| Post petition amount due | $457.65 |
| Escrow Shortage | $0.00 |
| Suspense | $0.00 |
| Total Post petition due | $457.65 |

| Post Petition Payment History | | | | |
|---|---|---|---|---|
| Post Pmt Rcpt | Post Due Dt Pd | Mo $ Due | $ Received | Comments |
| Due | 12/01/2017 | $152.55 | $0.00 | |
| Due | 01/01/2018 | $152.55 | $0.00 | |
| Due | 02/01/2018 | $152.55 | $0.00 | |
| Total Due | | $457.65 | | Total Pmts Due |
| Total Received | | | $0.00 | $457.65 |

Page 1

*Exhibit "A"*

SPS SELECT Portfolio SERVICING, inc.

Loan Number: 4745
Preparation Date:02/12/2018
Prepared By: ManojkumarMu

**Prior and SPS Payment History**

| Payments Detail | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Transaction Date | Transaction Description | Trans action Code | Due Date | Payment | Principal | Interest | Escrow | Fee / Advance | Fee / Advance Description | Unapplied | Restricted Escrow |
| 09/07/2017 | New Loan Setup | 142 | 04/01/2017 | $0.00 | ($10,682.86) | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 09/07/2017 | Pre-distributed Interest, Escrow, Payment | 170 | 04/01/2017 | $6.61 | $0.00 | $0.00 | $0.00 | $0.00 | | $6.61 | $0.00 |
| 12/06/2017 | Custom Payment | 173 | 04/01/2017 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |



**RR REVIEW**
VALUE TRUST RELATIONSHIP
www.RRReview.com
866-876-5095

| Account # | | Order # | 4175995 |
|---|---|---|---|
| Client | Select Portfolio Servicing, Inc. | Group ID | 404 |
| Inspection | Exterior | Occupancy | Occupied |
| Effective Date | 11/02/2017 | County | Glynn |
| Owner | MARIA TRESVANT | Parcel # | 01-02643 |
| Address | 2320 I ST BRUNSWICK GA 31520 | | |
| Correction | | | |

## General Information

| Property Type | Single Family | Housing Inventory | Stable | Tax Assessed Value | $28,580 | Neighborhood Low | $9,000 |
|---|---|---|---|---|---|---|---|
| Location | Suburban | Property Values | Stable | Annual Property Tax | $189 | Neighborhood High | $164,900 |
| Ownership Type | Fee-simple | Land Value | $5,500 | Neighborhood Predominant | $75,000 | Typical/Distressed Marketing | 100 / 30 days |

## Listing and Sale Information

| Currently Listed | No | Current List Price | - | Last Sale Price | - | Prev. List (12 Mos.) | No |
|---|---|---|---|---|---|---|---|
| Listing Date | - | Original List Price | - | Last Sale Date | - | Prev. Sale (36 Mos.) | No |
| **Subject Comments** | |  | This comp is tabby in construction and appears to be made of tabby. The garage is front mounted and appears to have a bonus room a (See Addendum) | | | | |

## Comparable Information

| | Subject | Sale 1 | Sale 2 | Sale 3 | Listing 1 | Listing 2 | Listing 3 |
|---|---|---|---|---|---|---|---|
| Address | 2320 I ST , 31520 | 2024 WALNUT AVE , 31520 | 617 ELLIS STREET , 31520 | 800 ALBANY STREET , 31520 | 2410 ELLIS ST , 31520 | 305 ALBANY , 31520 | 3712 NORWICK LANE , 31520 |
| Proximity | - | 0.81 Miles | 1.44 Miles | 1.21 Miles | 0.97 Miles | 1.64 Miles | 1.94 Miles |
| DataSource | Tax Records | MLS:R1582784S | MLS:R158330SS | MLS:R1584632S | MLS:R1583825A | MLS:R1584426A | MLS:R1585415A |
| HOA | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Fair Market Rent | $750 | $750 | $750 | $850 | $700 | $750 | $750 |
| Sale Type | - | Arms Length | Arms Length | Arms Length | Arms Length | Arms Length | Arms Length |
| Orig List Price | - | $155,000 | $175,000 | $89,995 | $62,500 | $143,900 | $69,000 |
| Current List Price | - | - | - | - | $62,500 | $129,000 | $69,000 |
| Orig List Date | - | 03/17/2017 | 04/18/2017 | 07/08/2017 | 05/04/2017 | 06/28/2017 | 08/28/2017 |
| Sale Price | - | $115,000 | $159,215 | $89,960 | - | - | - |
| Concessions | - | $4,050 | $5,000 | $0 | - | - | - |
| Sale Date | - | 09/01/2017 | 10/13/2017 | 08/21/2017 | - | - | - |
| Financing | - | FHA | FHA | Conventional | - | - | - |
| DOM | - | 168 | 178 | 44 | 183 | 128 | 67 |
| # of Units | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Style | Rambler/Ranch | Rambler/Ranch | Rambler/Ranch | Rambler/Ranch | Rambler/Ranch | Rambler/Ranch | Rambler/Ranch |
| Lot Size | 0.11 acres | 0.25 acres | 0.19 acres | 0.11 acres | 0.28 acres | 0.09 acres | 0.23 acres |
| View | Neighborhood | Neighborhood | Neighborhood | Neighborhood | Neighborhood | Neighborhood | Neighborhood |
| Condition | Average | Average | Average | Average | Average | Average | Average |
| Year Built | 1920 | 1949 | 1890 | 1918 | 1910 | 1930 | 1936 |
| Total Room Count | Rms/Bds/Full/Half 8/4/2/0 | Rms/Bds/Full/Half 6/3/2/0 | Rms/Bds/Full/Half 7/3/3/0 | Rms/Bds/Full/Half 6/3/1/0 | Rms/Bds/Full/Half 5/3/1/1 | Rms/Bds/Full/Half 6/3/2/0 | Rms/Bds/Full/Half 7/5/2/0 |
| Above Grade Sq Ft | 1575 | 1516 | 1534 | 1551 | 1348 | 1525 | 1544 |
| Basement SF | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| % Basement Finish | - | - | - | - | - | - | - |
| Garage/Carport | 2 Attached | 1 Attached | 2 Off Street | 2 Off Street | 2 Off Street | 2 Attached | 1 Street Parking |
| Pool/Spa | No | No | No | No | No | No | No |
| Amenities | A/C | A/C | A/C | A/C | A/C | A/C | A/C |
| Best Sale/List | | | | X | | X | |
| Adjustment for Differences | - | -$8,000 | -$9,000 | $9,000 | $9,000 | $0 | $9,000 |
| Adjusted Price | - | $107,000 | $150,215 | $98,960 | $71,500 | $129,000 | $78,000 |
| SP / GLA Per SF | $67.94 | $75.86 | $103.79 | $58.00 | $46.36 | $84.59 | $44.69 |

## Comparable Comments (See Page 3)

## Marketing Strategy

| 30 Day As Is | $115,000 | 30 Day Repaired | $115,000 |
|---|---|---|---|
| 90 - 120 Days "As Is" | $107,000 | 90 - 120 Days "Repaired" | $107,000 |
| As-Is List Price | $122,000 | Repaired List Price | $122,000 |
| Estimated Repairs | $0 | | (See following page for repair details) |

Exhibit "B"

## Subject & Neighborhood Information

| | | | | | | |
|---|---|---|---|---|---|---|
| | Zoning: | SFR | Current Use: | Single Family | HOA Fee: | $0 |
| | Zoning Code: | R6 | Projected Use: | Single Family | HOA Amenities: | - |
| Neighborhood Comment | | Subject is located in an older established neighborhood that is known as a socioeconomically challenged area. It is within 2 miles of the area hospital, within 3 blocks of several fast foot establishments and approximately 4 miles of the nearest schools. Estimated % of REO Homes: 1%-10%. | | | | |
| Environmental Issues | | No | | | | |
| Functional or Economic Obsolescence | | No | | | | |
| Positive / Negative Features | | The neighborhood is the largest issue due to its reputation. | | | | |
| Sewer | | Public | | | | |
| Water | | Public | | | | |

## Repairs – Exterior

| Item | Description | Estimated Cost |
|---|---|---|
| 1. Exterior Finish | - | $0 |
| 2. Painting | - | $0 |
| 3. Windows | - | $0 |
| 4. Roof | - | $0 |
| 5. Structural | - | $0 |
| 6. Landscaping | - | $0 |
| 7. Outbuildings | - | $0 |
| 8. Debris Removal | - | $0 |
| 9. Utility | - | $0 |
| 10. Other | - | $0 |
| **Grand Total for Cost of Repairs** | | **$0** |

## Quality Control Review

| Item | Quick Sale | 90 - 120 Day |
|---|---|---|
| Field "As Is" Price | $115,000 | $107,000 |
| "As Is" Price Adjusted by Quality Control | - | - |
| Field "Repaired" Price | $115,000 | $107,000 |
| "Repaired" Price Adjusted by Quality Control | - | - |

### Quality Control Comment
This report has passed automated quality control criteria and photo qc review.

### Map Comments
This report has passed automated quality control criteria and map qc review.

## Purpose
The purpose of this analysis is to provide a probable sale price of the subject property. This analysis is not to be used in lieu of an appraisal for the purpose of determining whether to approve a mortgage loan. Nothing in this report should be construed as a guarantee of value or condition of the subject property. This analysis is not an appraisal and has not been performed in accordance with the Uniform Standards of Professional Appraisal Practices. This report is for the internal use of the name client listed above, and is to assist with mortgage due diligence and internal decision-making processes. It will not be used for loan origination.

# LOAN AGREEMENT
## Including Truth-in-Lending Disclosure

| | |
|---|---|
| **Lender:** (Called "We", "Us", "Our")<br>BENEFICIAL MORTGAGE CO. OF GEORGIA<br>5730 OGEECHEE ROAD<br>SUITE 450<br>SAVANNAH, GA 31405 | |
| **Borrowers:** (Called "You", "Your")<br>MARIA L. TRESVANT<br>2320 I ST<br>BRUNSWICK, GA 31520 | |
| **Date of Loan:** 07/25/2007 | **Loan Number** |

In this agreement, "you", "your" mean the Borrower(s) who signs this agreement. "We", "us" and "our" refer to the Lender. This agreement covers the terms and conditions of your loan. It is important to us that you clearly understand the features of your loan. Please read this agreement carefully, and ask us any questions you may have.

| Truth-in-Lending Disclosure | | | |
|---|---|---|---|
| **ANNUAL PERCENTAGE RATE**<br><br>The cost of your credit as a yearly rate. | **FINANCE CHARGE**<br><br>The dollar amount the credit will cost you. | **Amount Financed**<br><br>The amount of credit provided to you or on your behalf. | **Total of Payments**<br><br>The amount you will have paid after you have made all payments as scheduled. |
| 14.085% | $27,873.29 ("e") | $12,399.91 | $40,273.20 ("e") |
| **Your payment schedule will be:** | | | |
| **Number of Payments** | **Amount of Payments** | **When Payments are Due ("e")** | |
| 1 | $152.55 | 08/25/2007 | |
| 263 | $152.55 | Day 25 of each month thereafter. | |
| "e" means an estimate | | | |

**Assumption:** Someone buying your home cannot assume the remainder of the mortgage on the original terms.

**YOU ARE GIVING US A SECURITY INTEREST IN THE REAL PROPERTY AS DESCRIBED IN THE  SECURITY DEED AND LOCATED AT:**

2320 I ST
BRUNSWICK, GA 31520

| | |
|---|---|
| **Late Charge** | If your monthly installment is not paid in full within 10 day(s) after it is due, you will be charged a late charge equal to 5% of the full amount of the monthly installment. |
| **Prepayment** | You may prepay your loan in full or in part at any time without penalty. If you pay off your loan early, you will not be entitled to a refund of that part of the Finance Charge consisting of any prepaid finance charges. |

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**The Settlement Statement provides your disbursements and the itemization of the Amount Financed.**

## ABOUT THE SECURITY:

| | |
|---|---|
| **Your Obligation to Insure** | You shall keep the structures located on the real property securing your loan insured against damage caused by fire and other physical hazards, name us as a loss payee and deliver to us a loss payable endorsement. If insurance covering the real property is canceled or expires while your loan is outstanding and you do not reinstate the coverage, we may obtain, at our option, hazard insurance coverage protecting our interest in the real property as outlined below. |
| **Real Property Taxes and Homeowners Insurance** | Homeowners Insurance covering fire and other hazards on the real property security is required, naming us as a loss payee for the term of your loan. You shall pay us on the day that monthly installments are due under this agreement, an additional sum (the "Funds") to be used to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Deed as a lien or encumbrance on the real property; (b) leasehold payments or ground rents on the real property, if any; (c) premiums for any and all insurance required by us under this agreement and the Security Deed ("Escrow Items"). You will pay us the Funds for Escrow Items unless we waive your obligation to pay the Funds for any or all Escrow Items. We may waive your obligation to pay us Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, you will be solely responsible for paying the amounts due for any Escrow Items directly and, if we require, you shall furnish us with receipts |

evidencing such payment within such time period as we may reasonably require.

**Title Insurance**

Title insurance on the real property security is required, naming us as a loss payee. You must purchase title insurance or its local equivalent protecting our lien on the real property as a condition to obtaining your loan. You may purchase title insurance from any title insurance provider you choose that we reasonably believe provides sufficient financial protection to us. You request such title insurance and authorize us to deduct the costs of the title insurance from your loan proceeds in order to pay the title insurance provider.

**Lender's Right to Place Hazard Insurance**

You authorize us, at our option, to obtain hazard insurance coverage on the real property in an amount not greater than the outstanding balance of principal and interest on your loan or, if known to be less, the replacement value of the real property, in the event that you fail to maintain the required hazard insurance outlined above or fail to provide adequate proof of its existence. You authorize us to charge you for the costs of this insurance. We may choose to add the insurance charges to the unpaid balance of your loan, which will accrue interest at the Contract Rate, or bill you for the annual premium on a periodic basis. The addition of the insurance charges due might increase the amount of your final monthly installment. The cost of lender-placed hazard insurance might be higher than the cost of standard insurance protecting the real property. The lender-placed insurance will not insure the contents of the real property or provide liability coverage. The insurance might not be the lowest cost coverage of its type available and you agree that we have no obligation to obtain the lowest cost coverage. We or an affiliated company might receive some benefit from the placement of this insurance and you will be charged for the full cost of the premium without reduction for any such benefit. If at any time after we have obtained this insurance, you provide adequate proof that you have subsequently purchased the required coverage, we will cancel the coverage we obtained and credit any unearned premiums to your loan.

## ABOUT YOUR LOAN REPAYMENT:

| | | |
|---|---|---|
| SCHEDULED MATURITY DATE | 07/25/2029 | PREPAID FINANCE CHARGES $381.29 |
| MONTHS OF CONTRACT | 264 | PRINCIPAL $12,781.20 |
| CONTRACT RATE (per year) | 13.590% | |
| AMOUNT FINANCED | $12,399.91 | |

**Promise to Pay**

You agree to the terms of this agreement and promise to pay us the principal (Amount Financed plus prepaid finance charges consisting of Origination Fee/Points, and any odd days interest reflected in your settlement statement) plus interest which is computed at a rate of 13.590% (the "Contract Rate"). You agree to pay us in monthly installments as stated in the Payments provision of this agreement. You also agree to pay us: (a) other charges as provided in this agreement; (b) credit insurance charges, if any; (c) collection costs permitted by applicable law, including reasonable attorneys' fees otherwise due under your Security Deed and (d) any other charges reflected in your settlement statement.

**Interest**

Interest will be charged on the unpaid principal until the full amount of principal has been paid. You will pay us interest at a yearly Contract Rate of 13.590%, which shall never exceed the interest rate provided for under Section 7-4-18 of the Georgia Code, even if you default or prepay.

The interest rate required by this provision is the rate you will pay both before and after any default as described in this agreement.

**Payments**

**Time and Place of Payments**

You will pay us principal and interest by paying your monthly installments.

You will make your monthly installments to us on the same day of each month beginning on or about 08/25/2007. You will make these monthly installments every month until you have paid all of the principal and interest and any other charges described herein that you may owe under this agreement. Your monthly installments will be applied to interest before principal. If, on the Scheduled Maturity Date, 07/25/2029, you still owe amounts under this agreement, you will pay those amounts in full on that date, which amount will include interest at the then current Contract Rate or any such other rate as required by law.

You will make your monthly installments at the address shown on page one or at the address shown on your monthly billing statement or at a different place that we may give you.

**Amount of Monthly Installments**

Your monthly installments will be in the amount of $152.55, plus the amount of any optional insurance or funds for escrow you elected.

**Prepayment**

You may prepay your loan in full or in part at any time without penalty. If you pay off your loan early, you will not be entitled to a refund of that part of the Finance Charge consisting of any prepaid finance charges.

**Late Charge**

If your monthly installment is not paid in full within 10 day(s) after it is due, you will be charged a late charge equal to 5% of the full amount of the monthly installment.

| | |
|---|---|
| **Bad Check Charge** | You agree to pay $30.00 each time any check or payment is made on your loan by any means, including but not limited to, a check or ACH (our Authorization to Debit Account), which is returned unpaid by your bank or other financial institution for any reason. |
| **Additional Charges** | You agree to pay any amounts actually incurred by us for services rendered in connection with the opening and servicing of your loan, as allowed by law. These amounts may include fees for appraisals, title examination, title insurance or its local equivalent, fees and taxes paid to public officials in connection with recording, releasing or satisfying the Security Deed and other taxes as shown in the Settlement Statement incorporated herein by this reference. You also agree to pay any other amounts incurred by us in connection with the servicing of your loan including any amounts that we may (but need not) pay or that are otherwise due under the Security Deed, incorporated herein by this reference. |
| **Default** | If you fail to make any monthly installment after it becomes due or fail to comply with the terms of the Security Deed, we may require that you pay us, at once and without prior notice or demand, the unpaid balance of your loan plus accrued interest and any applicable charges in this agreement as authorized. |
| **Security Interest** | You agree to give us a security interest in the real property as described in the Security Deed. |

## ABOUT OUR RELATIONSHIP:

| | |
|---|---|
| **Exchange of Information** | You understand and agree that we will call you from time to time to discuss your financial needs and any loan products that may be of interest to you as may be permitted by applicable law. For more information regarding our privacy practices, please refer to our Privacy Statement, which is included with your loan documents. You agree that the Department of Motor Vehicles (or your state's equivalent of such department) may release your residence address to us, should it become necessary to locate you. |
| **Credit Bureau Reporting** | If you fail to fulfill the terms of your loan, a negative report reflecting on your credit record may be submitted to a Credit Reporting Agency. |
| **Telephone Monitoring** | You agree that we may listen to and/or record telephone calls between you and our representatives for quality assurance purposes. |
| **Insurance** | Credit insurance is optional. Any applicable insurance disclosures are included with this agreement and are incorporated herein by this reference. |
| **Alternative Dispute Resolution** | The terms of the Arbitration Rider signed by you as part of your loan transaction are incorporated herein by this reference. |

1:24

**Applicable Law**       We are a residential mortgage licensee under the Georgia Residential
                         Mortgage Act. This loan is made at an agreed rate authorized by
                         Section 7-4-2(a)(1), Official Code of Georgia Annotated, a section of
                         the Georgia interest and usury statute.

---

If any provision of this agreement is finally determined to be void or unenforceable under any law, rule, or regulation, all other provisions of this agreement will remain valid and enforceable. Our failure to enforce any provision(s) to this agreement shall not be deemed to constitute a waiver of such term(s). In order for any amendment to this agreement to be valid, it must be agreed to by you and us.

**You acknowledge that before signing this agreement, you have read and received this agreement which includes the Federal Truth-in-Lending disclosure and, as applicable, any other riders and/or disclosures incorporated herein by reference. By signing below, you agree to observe the terms and conditions of this agreement.**

Borrower: _Maria L. Tresvant_        Date: _7/25/07_
          MARIA L. TRESVANT

Witness: _Carnie H. Humay Nellis_

### STATE MORTGAGE DISCLOSURE

State law requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan, you may lose the property that serves as collateral for the mortgage loan through foreclosure.

Borrower: _Maria L. Tresvant_        Date: _7/25/07_
          MARIA L. TRESVANT

Book 2282 Page 421, Filed and Recorded 08/10/2007 at 10:35:42 AM
CFN #632007014700 Intangible Tax Paid $39.00 Lola Jamsky Clerk of Superior
Court Glynn County, GA

Recording Requested by &
When Recorded Return To:
US Recordings, Inc.
2925 Country Drive
St. Paul, MN 55117

~~WHEN RECORDED MAIL TO:~~
~~Records Processing Services~~
~~Attn: Doris Ternowski~~
~~577 Lamont Road~~
~~Elmhurst, IL 60126~~
328102

## SECURITY DEED

[ ] If box is checked, this Deed secures future advances.

THIS DEED is made this __25TH__ day of __JULY__ __20 07__, between the Grantor,
MARIA L. TRESVANT, A/K/A MARIA P. TRESVANT, NOT STATED

(herein "Borrower"), and Grantee BENEFICIAL MORTGAGE CO. OF GEORGIA
a corporation organized and existing under the laws of __DELAWARE__ whose address is
5730 OGEECHEE ROAD, SUITE 460, SAVANNAH, GA 31405
(herein "Lender").

The following paragraph preceded by a checked box is applicable.

[x] WHEREAS, Borrower is indebted to Lender in the principal sum of
$ __12,781.20__, evidenced by Borrower's Loan Agreement dated
__JULY 25, 2007__ and any extensions or renewals thereof (including those pursuant to
any Renegotiable Rate Agreement) (herein "Note"), providing for monthly installments of
principal and interest, including any adjustments to the amount of payments or the contract rate if
that rate is variable, with the balance of the indebtedness, if not sooner paid, due and payable on
__JULY 25, 2020__;

[ ] WHEREAS, Borrower is indebted to Lender in the principal sum of $ _____
or so much thereof as may be advanced pursuant to Borrower's Revolving Loan Agreement dated
_____ and extensions and renewals thereof (herein "Note"), providing for
monthly installments, and interest at the rate and under the terms specified in the Note, including
any adjustments in the interest rate if that rate is variable, and providing for a credit limit stated in
the principal sum above and an initial advance of $ _____; The entire
outstanding balance under the Note shall be due and payable, if not paid earlier on
_____;

TO SECURE to Lender the repayment of (1) the indebtedness evidenced by the Note, with
interest thereon, including any increases if the contract rate is variable; (2) future advances under
any Revolving Loan Agreement; (3) the payment of all other sums, with interest thereon, advanced
in accordance herewith to protect the security of this Deed; and (4) the performance of the
covenants and agreements of Borrower herein contained, Borrower does hereby grant and convey to
Lender and Lender's successors and assigns, with power of sale, the following described property
located in the County of __GLYNN__ State of
Georgia:

ALL THAT CERTAIN LOT, TRACT OR PARCEL OF LAND SITUATE, LYING
AND BEING IN THE COUNTY OF GLYNN, CITY OF BRUNSWICK, AND IN
THAT PORTION OF SAID CITY KNOWN AS AND CALLED OSBORNE
ADDITION TO THE URBANA SUBDIVISION OF SAID CITY, AND BEING
DESIGNATED AND DESCRIBED ACCORDING TO THE MAP OR PLAN OF
SAID CITY AS LOT NUMBER NINETEEN (19) AND BEING MORE
PARTICULARLY DESCRIBED AS FOLLOWS, TO WIT:

CONTINUED ON EXHIBIT A-LEGAL DESCRIPTION

11-11-05
MTG

Book 2282 Page 422

-2-

TO HAVE AND TO HOLD such property unto Lender and Lender's successors and assigns forever, together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Deed; and all of the foregoing, together with said property (or the leasehold estate if this Deed is on a leasehold) are hereinafter referred to as the "Property".

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title of the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest (including any variations in interest resulting from changes in the Contract Rate that may be specified in the Note) on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Deed shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Deed is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Deed be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 12. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Deed or performing the covenants and agreements secured by this Deed.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2 or as may be required by the Note and/or applicable law, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Deed, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Deed as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by ........................... evidencing such

Book 2282 Page 423

-3-

payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Deed, as the phrase "covenant and agreement" is used in Section 7. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 7 and pay such amount and Borrower shall then be obligated under Section 7 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 12 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Deed, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the loan does not qualify as a "federally related mortgage loan" under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Deed, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Prior Deeds to Secure Debt; Mortgages and Deeds of Trust; Charges; Liens. Borrower shall perform all of Borrower's obligations under any security deed, mortgage, deed of trust or other security agreement with a lien which has priority over this Deed, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed, and leasehold payments or ground rents, if any.

5. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any security deed, mortgage, deed of trust or other security agreement with a lien which has priority over this Deed.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed.

6. Preservation and Maintenance of Property; Leasehold; Condominiums; Planned Unit Developments. Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed is on a leasehold. If this Deed is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

Book 2282 Page 424

-4-

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the applicable contract rate, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any security deed, mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

10. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed granted by Lender to any successor in interest of Borrower and all other parties who are or hereafter become secondarily liable shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed, but does not execute the Note, (a) is co-signing this Deed only to grant and convey that Borrower's interest in the Property to Lender under the terms of this Deed, (b) is not personally liable on the Note or under this Deed, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed as to that Borrower's interest in the Property.

12. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. **Governing Law; Severability.** The applicable law contained in the Note shall control. Where no applicable law is contained therein, the state and local laws of the jurisdiction in which the Property is located shall apply except where such laws conflict with Federal law; in which case, Federal law applies. In the event that any provision or clause of this Deed or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed, if requested, at the time of execution or after recordation hereof.

15. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made

ORIGINAL

Book 2282 Page 425

-5-

to the Property.

16. **Transfer of the Property.** If Borrower sells or transfers all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed, (b) a transfer by devise, descent, or by operation of law upon the death of a joint tenant, (c) the grant of any leasehold interest of three years or less not containing an option to purchase, (d) the creation of a purchase money security interest for household appliances, (e) a transfer to a relative resulting from the death of a borrower, (f) a transfer where the spouse or children of the borrower become an owner of the property, (g) a transfer resulting from a decree of dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement, by which the spouse of the borrower becomes an owner of the property, (h) a transfer into an inter vivos trust in which the borrower is and remains a beneficiary and which does not relate to a transfer of rights of occupancy in the property, or (i) any other transfer or disposition described in regulations prescribed by the Federal Home Loan Bank Board, Borrower shall cause to be submitted information required by Lender to evaluate the transferee as if a new loan were being made to the transferee. Borrower will continue to be obligated under the Note and this Deed unless Lender releases Borrower in writing.

If Lender does not agree to such sale or transfer, Lender may declare all of the sums secured by this Deed of Trust to be immediately due and payable. If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 12 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed or delivered within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Acceleration; Remedies.** Except as provided in paragraph 16 hereof, or as otherwise required by law, upon Borrower's breach of any covenant or agreement of Borrower in this Deed, including the covenants to pay when due any sums secured by this Deed, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed to be immediately due and payable without further demand and may invoke the power of sale herein granted (and Borrower hereby appoints Lender the agent and attorney-in-fact for Borrower to exercise said power of sale) and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall mail a copy of a notice of sale to Borrower in the manner provided in paragraph 12 hereof and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Lender may determine. Lender or Lender's designee may purchase the Property at any sale.

Lender shall deliver to the purchaser Lender's deed to the Property in fee simple and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed; and (c) the excess, if any, to the person or persons legally entitled thereto. The power and agency hereby granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of said indebtedness as provided by law.

If the Property is sold pursuant to this paragraph 17, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at such sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed om accordance with applicable law.

Book 2282 Page 426

-6-

Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

18. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Deed due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Deed or (ii) entry of a judgment enforcing this Deed if: (a) Borrower pays Lender all sums which would be then due under this Deed and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Deed, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed shall continue unimpaired. Upon such payment and cure by Borrower, this Deed and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. Assignment of Rents; Appointment of Receiver; Lender in Possession. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by the Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed. Lender and the receiver shall be liable to account only for those rents actually received.

20. Release. Upon payment of all sums secured by this Deed, Lender shall cancel this Deed if Lender is not committed to future refinancings or future advances.

21. Waiver of Homestead. Borrower hereby waives all right of homestead exemption in the Property.

22. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Deed and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

23. Deed to Secure Debt. This conveyance is to be construed under the existing laws of the State of Georgia as a security deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

24. Arbitration Rider to Note. The Arbitration Rider attached to and made a part of the Note is hereby incorporated by reference and made a part of this Deed of Trust.

25. Intangible Recording Tax Exemption. If this Security Deed is being used to refinance a previous Note from the same Lender, an Affidavit is attached as Exhibit B to the Security Deed as required in accordance with the Intangible Recording Tax Exemption, Code Section 48-6-65 as amended by the Georgia Legislature in 1981.

(THIS SPACE INTENTIONALLY LEFT BLANK)

Book 2282 Page 427

-7-

## REQUEST FOR NOTICE OF DEFAULT AND
## FORECLOSURE UNDER SUPERIOR SECURITY
## DEEDS, MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any security deed, mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Deed to give Notice to Lender, at Lender's address set forth on page one of this Security Deed, of any default under any superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, BORROWER has executed and sealed this Deed.

Signed, sealed and delivered in the presence of:

WITNESS    KIM BERRY                          Borrower    Maria L Tresvant AKA

WITNESS    LISA D. JONES                      Borrower    Maria P Tresvant

STATE OF GEORGIA, ___Chatham_____    County ss:

On this __25th__ day of ____July____, 20 _07_, before me personally appeared ___Maria L Tresvant AKA Maria P Tresvant____, known to me (or satisfactorily proven) to be the person described in and who executed the foregoing instrument, and acknowledged that ___she___ executed
                                              (he/she/they)
the same as ___her___ free act and deed.
             (his/her/their)

My commission expires:
___8/18/09___                                 Notary Public                    (SEAL)

STATE OF GEORGIA, _____    County ss:

On this _____ day of _____, 20 ___, before me personally appeared _____, known to me (or satisfactorily proven) to be the person described in and who executed the foregoing instrument, and acknowledged that _____ executed
                                              (he/she/they)
the same as _____ free act and deed.
             (his/her/their)

My commission expires:
_____                              _____
                                              Notary Public        (SEAL)

Book 2282 Page 428

EXHIBIT A (PAGE 1)

COMMENCING AT A POINT WHICH MARKS THE INTERSECTION OF THE
SOUTHERLY LINE OF 'I' STREET WITH THE WESTERLY LINE OF
WILSON AVENUE; THENCE PROCEEDING IN A SOUTHERLY DIRECTION
ALONG THE WESTERLY LINE OF WILSON AVENUE A DISTANCE OF
FORTY-FIVE (45) FEET; THENCE AT RIGHT ANGLES TO THE LAST
DESCRIBED LINE RUNNING IN A WESTERLY DIRECTION A DISTANCE OF
ONEHUNDRED (100) FEET TO AN ALLEY; THENCE AT RIGHT ANGLES TO
THE LAST DESCRIBED LINE A DISTANCE OF FORTY-FIVE (45) FEET
TO THE SOUTHERLY LINE OF 'I'
STREET; THENCE AT RIGHT ANGLES TO THE LAST DESCRIBED LINE
RUNNING IN AN EASTERLY DIRECTION A DISTANCE OF ONE HUNDRED
(100) FEET TO THE POINT OF BEGINNING.
TAX MAP OR PARCEL ID NO.: 01-02643

When recorded return to:
**Richmond Monroe Group**
**82 Jim Linegar LN**
**Branson West, MO 65737**

Recording Requested By:  Select Portfolio Servicing, Inc.
~~When Recorded Return To: Bill Koch, Select Portfolio Servicing, Inc., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119~~

---

## CORPORATE ASSIGNMENT OF MORTGAGE / SECURITY DEED

TS Ref #: 0
GA/GLYNN

Assignment Prepared on: January 04, 2018

**ASSIGNOR:BENEFICIAL FINANCIAL I INC., A CALIFORNIA CORPORATION, ON BEHALF OF ITSELF AND AS SUCCESSOR BY MERGER TO BENEFICIAL MORTGAGE CO. OF GEORGIA BY SELECT PORTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT**, at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

**ASSIGNEE:DLJ MORTGAGE CAPITAL, INC.**, at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DR., SALT LAKE CITY, UT, 84119

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage / Security Deed Dated: 7/25/2007, in the amount of  $12,781.20, executed by MARIA L. TRESVANT, A/K/A MARIA P. TRESVANT, NOT STATED to BENEFICIAL MORTGAGE CO. OF GEORGIA and Recorded: 8/10/2007, Instrument #: 632007014700, Book: 2282, Page: 421 in GLYNN County, State of Georgia.

Property Address: 2320 I ST, BRUNSWICK, GA, 31520

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage / Security Deed.

BENEFICIAL FINANCIAL I INC., A CALIFORNIA CORPORATION, ON BEHALF OF ITSELF AND AS SUCCESSOR BY MERGER TO BENEFICIAL MORTGAGE CO. OF GEORGIA BY SELECT PORTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT

On:  JAN 1 7 2018

Signature:
Name:  JOLENE M. WHITAKER
Title:  DOC CONTROL OFFICER

Signature:
Witness:  JORGE PINERO

Notary Witness

State of UTAH
County of SALT LAKE

Subscribed and sworn to before me on this ___ day of JANUARY, in the year 2018 by
Jolene M. Whitaker Document Control Officer.

WITNESS my hand and official seal,

_____ Hedin Dachiardi
Notary Expires: MAR 1 0 2019 / #: 682335

GA/GLYNN

HEDIN DACHIARDI
Notary Public  State of Utah
My Commission Expires on:
March 19, 2019
Comm. Number 682335